IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

DONNA J. FORD,

      Plaintiff,

v.                              CASE NO. 2:06-cv-00165

MICHAEL J. ASTRUE,
Commissioner of Social Security[1],

      Defendant.

## M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  This case is presently pending before the court on Plaintiff's Motion for Summary Judgment and Defendant's Brief in Support of Judgment on the Pleadings.  Both parties have consented in writing to a decision by the United States Magistrate Judge.

Plaintiff, Donna Ford (hereinafter referred to as "Claimant"), filed applications for SSI and DIB on April 8, 2003, alleging disability as of February 7, 2003, due to back, hand, leg and neck

---

[1]  On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security.  Under Fed. R. Civ. P. 25(d)(1) and 42 U.S.C. § 405(g), Michael J. Astrue is automatically substituted for Linda S. McMahon as the defendant in this action.

impairments. (Tr. at 76-78, 96, 275-78.) The claims were denied initially and upon reconsideration. (Tr. at 57-60, 63-65, 280-84, 286-88.) On February 26, 2004, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 66.) The hearing was held on June 16, 2004, before the Honorable Theodore Burock. (Tr. at 30-54.) By decision dated July 29, 2004, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 17-22.) The ALJ's decision became the final decision of the Commissioner on December 16, 2005, when the Appeals Council denied Claimant's request for review. (Tr. at 5-8.) On March 6, 2006, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§

2

404.1520(a), 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. §§ 404.1520(b), 416.920(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. §§ 404.1520(c), 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. §§ 404.1520(d), 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. §§ 404.1520(e), 416.920(e).  By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f) (2004). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists

3

in the national economy. <u>McLamore v. Weinberger</u>, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 18.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of lumbar spine disc disease, cervical impairment, knee impairment, upper extremities impairment, depression and myofascial pain syndrome. (Tr. at 19.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 19.) The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations. (Tr. at 21.) As a result, Claimant can return to her past relevant work as a waitress and mail clerk. (Tr. at 21.) On this basis, benefits were denied. (Tr. at 21.)

<u>Scope of Review</u>

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the

4

case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."  Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was forty-seven years old at the time of the administrative hearing.  (Tr. at 33.)  Claimant completed the ninth grade.  (Tr. at 35.)  In the past, she worked as a waitress and mail clerk.  (Tr. at 47-48.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it briefly below.

Claimant was involved in a motor vehicle accident in February of 2003.  She was diagnosed with acute cervical spine strain, acute thoracic spine strain and acute musculoskeletal strain.  (Tr. at 157.)

5

A State agency medical source completed a Physical Residual Functional Capacity Assessment on May 20, 2003, and opined that Claimant could perform light level work with occasional postural limitations, some limitation in feeling, a need to avoid even moderate exposure to vibration and a need to avoid concentrated exposure to hazards. (Tr. at 160-66.)

The record includes physical therapy treatment notes dated May 18, 2003, through December 4, 2003. (Tr. at 168-87.)

The record includes evidence from Claimant's treating physician, Marietta Babayev, M.D., dated February 27, 2003, through December 17, 2003. On February 27, 2003, Dr. Babayev examined Claimant following a car accident on February 7, 2003. Dr. Babayev diagnosed status post motor vehicle accident, cervical spine sprain/strain, lumbosacral sprain/strain, myofascial pain in the cervical and lumbosacral spine, and paresthesias in the bilateral hands and feet. She prescribed physical therapy, use of a TENS unit and an upper and lower extremity nerve conduction study. (Tr. at 217-19.) Electrodiagnostic studies on March 5, 2003, showed evidence of mild injury of the median nerve at the bilateral wrists affecting motor and sensory components and evidence of moderate injury of the peroneal nerve at the right fibular head affecting motor components, predominantly demyelinating in nature. (Tr. at 209.)

On March 5, 2003, Dr. Babayev noted Claimant had not started

6

physical therapy yet.  Dr. Babayev prescribed bilateral wrist cock-
up splints based on the results of the electrodiagnostic study.
(Tr. at 206-07.)  On March 5, 2003, Dr. Babayev completed a
certification on which she indicated that Claimant's condition
would last ten months and that Claimant was unable to perform work
of any kind.  (Tr. at 208.)

On March 18, 2003, Dr. Babayev's impression was status post
motor vehicle accident, cervical spine sprain/strain, lumbosacral
spine  sprain/strain,  myofascial  pain  in  the  cervical  and
lumbosacral paraspinal muscles with multiple trigger points, median
nerve  injury  at  the  bilateral  wrists,  worse  on  the  right  and
peroneal  nerve  injury  at  the  right  fibular  head.   Dr. Babayev
scheduled a right carpal tunnel steroid injection.  (Tr. at 205.)
The injection was performed on March 19, 2003.  (Tr. at 203.)  On
March 25, 2003, Dr. Babayev noted Claimant had bilateral knee
contusions.  Dr. Babayev recommended an MRI.  (Tr. at 202.)  An MRI
of the lumbar spine on April 7, 2003, showed mild diffuse disc
protrusions at the L3-4 and L4-5 disc space levels.  There was no
evidence of disc herniation, neural foraminal stenosis or spinal
stenosis.  (Tr. at 228.)  An MRI of Claimant's right knee on April
7, 2003, showed abnormal fluid adjacent to the medial collateral
ligament.   There  was  no  evidence  of  meniscal  tear  or  discrete
ligament tear.  (Tr. at 229.)  On April 22, 2003, Claimant reported
persistent numbness in the foot and difficulty driving, among other

7

complaints. (Tr. at 200.) On May 6, 2003, Claimant reported her symptoms were the same. Claimant would possibly undergo lumbar spinal injections. (Tr. at 197-98.) On August 22, 2003, and August 25, 2003, Claimant presented for acupuncture treatments. (Tr. at 196.) On September 9, 2003, Claimant reported acupuncture helped her leg pain and hand paraethesias, but worsened her neck pain. Claimant also reported worsened depression. Dr. Babayev prescribed Paxil. (Tr. at 194.) On September 24, 2003, Claimant underwent acupuncture. (Tr. at 193.)

On October 24, 2003, Claimant reported persistent symptoms in the lower back and pain in both hands with paresthesias to Dr. Babayev. Claimant reported physical therapy helped her symptoms. Claimant had persistent trigger points over the bilateral LS paraspinal muscles and tenderness over the LS spine. Straight leg raising test was negative. Sitting root test was negative. Bilateral upper extremity evaluation showed tenderness over the bilateral carpal tunnel regions and thenar eminences. Claimant was to follow up with a surgeon regarding carpal tunnel release and continue physical therapy. (Tr. at 191-92.)

On December 10, 2003, Claimant reported the same symptoms to Dr. Babayev, as well as worsening headaches. Dr. Babayev requested an MRI of the cervical spine and brain. (Tr. at 189-90.) On December 17, 2003, Claimant reported that her knees gave out on her and she fell down steps, landing on her ankles. Claimant had

8

tenderness over the bilateral knees with swelling over the bilateral ankles. Range of motion was painful but limited. There was tenderness throughout the lateral aspect and medial aspect of the bilateral ankles. X-rays showed no obvious fracture deformity. Dr. Babayev prescribed bilateral air casts. (Tr. at 187-88.) An MRI on January 2, 2004, showed minimal osteoarthritis and multiple disc degeneration with minimal disc bulging at the level between C5-C6. (Tr. at 225.)

A State agency medical source completed a Psychiatric Review Technique form on December 20, 2003, and opined that Claimant's mental impairments were not severe. (Tr. at 231-43.)

A State agency medical source completed a Physical Residual Functional Capacity Assessment on January 26, 2004, and opined that Claimant could perform light level work, with occasional postural limitations, limitations in the ability to reach in all directions, and a need to avoid concentrated exposure to vibration and hazards. (Tr. at 246-53.)

The record includes additional physical therapy treatment notes dated January 13, 2004. (Tr. at 255-56.)

The record includes additional treatment notes from Dr. Babayev dated May 20, 2004. Claimant continued to have neck, back and left knee problems, numbness in her hands, right subocciptal headaches and chest pain. Claimant had painful cervical range of motion at terminal range with tenderness over the right cervical

9

paraspinal muscles and right trapezius muscle. Spurling's test was negative. T/L/S spine evaluation showed lumbar spine range of motion was painful and limited with tenderness over the right thoracic and lumbosacral paraspinal muscles. Straight leg raising was negative, sitting root was negative. Bilateral upper extremity evaluation showed no acute problems. Tinel's sign was negative. Bilateral lower extremity evaluation showed tenderness over the bilateral knees, worse on the left over the lateral joint line quadriceps and patellar tendon, worse on the left. Claimant would undergo an MRI of the knee. (Tr. at 263-64.)

Dr. Babayev completed an undated Disability Claim Form and indicated that Claimant was incapable of minimal, sedentary activity. Claimant's employment restrictions lasted from February 7, 2003, through July 7, 2003. She opined that Claimant would return to work in four to six months. She opined that Claimant could perform part time work. (Tr. at 271-72.)

Dr. Babayev completed another form for insurance purposes on September 3, 2003. She opined that Claimant could occasionally lift and carry up to ten pounds. She opined that Claimant could not use her hands for simple grasping and fine manipulating on the left and right. Claimant could never squat, crawl or climb. (Tr. at 273.) She opined that Claimant was disabled from her current occupation and any occupation. (Tr. at 274.)

Claimant submitted to the Appeals Council, an Attending

10

Physician Statement from Dr. Babayev on which she opined that Claimant could work two to three hours per day "intermittently." (Tr. at 291.)  She further stated that Claimant could sit, stand and walk two hours intermittently, and that Claimant could occasionally lift up to twenty pounds.  She opined that Claimant could not tolerate a return to work.  (Tr. at 291.)

Claimant also submitted to the Appeals Council, a treatment note from Dr. Babayev dated August 20, 2004, which indicated Claimant's low back pain was worse, but her knee pain had improved. Dr. Babayev recommended trigger point injections.  (Tr. at 295.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to properly weigh the evidence of record from Claimant's treating physician.  (Pl.'s Br. at 5-8.)

The Commissioner argues that (1) substantial evidence supports the ALJ's finding that Claimant could perform her past relevant work; and (2) the ALJ was not required to accept the opinion of Claimant's treating physician.  (Def.'s Br. at 4-7.)

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability.   See 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2)

11

(2004). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) (2004). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) (2004). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1994).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6). These factors include: (1) Length of the treatment relationship and frequency of evaluation, (2) Nature and extent of the treatment relationship, (3) Supportability, (4) Consistency, (5) Specialization, and (6) various other factors. Additionally, the

regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2), 416.927(d)(2).

In his decision, the ALJ combined his findings about Claimant's credibility with a finding about the weight afforded the opinion of Dr. Babayev:

> I find the statements of claimant to be not fully credible. I find that she has exaggerated the scope and severity of her limitations in relation to her actual diagnoses, course of treatment and medications prescribed. She has had neither surgery nor been advised that she is a surgical candidate. Her treatment for both her physical and mental impairments has been only conservative in nature, primarily being medication. She has had no side effects of medication. There is no evidence of disc herniation or nerve root impingement, including on objective electrodiagnostic testing. There are no signs of muscle atrophy, indicating that she moves around in a fairly normal manner. She has not participated in a pain management program. There is no basis in the objective medical record to support her allegation and significantly reduced activities of daily living. Thus, I reject ... the opinion of Dr. Babayev, made on September 9, 2003, that the claimant would be so severely limited in her functional capability that she would be disabled as this assessment is not supported by the objective evidence of record. Also Dr. Babayev herself stated that the claimant would be able to do at least part-time work beginning July 7, 2003 (Exhibits 7F).

(Tr. at 20.)

The ALJ's findings regarding Dr. Babayev sufficiently comply with the applicable case law and regulations and are supported by substantial evidence.

Furthermore, the Appeals Council specifically incorporated the

13

evidence of record submitted following the ALJ's decision, including that from Dr. Babayev. As a result, the court must review the record as a whole, including the new evidence, in order to determine if the Commissioner's decision is supported by substantial evidence. Wilkins v. Secretary, 953 F.2d 93, 96 (4th Cir. 1991).

In its decision, the Appeals Council made the following findings about the evidence it received:

> The additional medical evidence does not describe any new or worsening impairment not previously evaluated by the Administrative Law Judge who found you could perform a range of light work. As noted in the hearing decision, Dr. Babayev [sic] (Exhibit 7F/pg 18) previously indicated you were capable of part-time work activity. This recent evidence submitted, while suggesting a more restrictive residual functional capacity than that found by the Administrative Law Judge, is internally inconsistent since Dr. Babayev [sic] diagnosed sprains and strains yet indicated you could not perform even sedentary work. In addition the medical opinion is not supported by objective test findings such as MRIs or X-rays. Accordingly, we found that these additional medical records as well as legal argument do not provide a basis for changing the Administrative Law Judge's decision.

(Tr. at 6.)

As with the findings of the ALJ, the findings of the Appeals Council comply with the applicable case law and regulations and are supported by substantial evidence.

After a careful consideration of the evidence of record, the court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Summary Judgment is DENIED, the

14

final decision of the Commissioner is AFFIRMED and this matter is DISMISSED from the docket of this court.

The Clerk of this court is directed to transmit copies of this Order to all counsel of record.

ENTER:  March 19, 2007

*Mary E. Stanley*

Mary E. Stanley
United States Magistrate Judge

15